J. W. Trotter, Jr., and Doris J. Trotter v. Commissioner.
Trotter v. Commissioner
Docket No. 139-69 "SC".
United States Tax Court
T.C. Memo 1969-179; 1969 Tax Ct. Memo LEXIS 117; 28 T.C.M. (CCH) 896; T.C.M. (RIA) 69179; September 2, 1969, Filed *117 Dougal C. Pope, Houston 1st Savings Bldg., Houston, Tex., and Donald G. Ritter, for the petitioners. W. Reed Smith, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes for the calendar years 1965 and 1966 in the amounts of $226.51 and $239.16, respectively. The only issue for decision is whether petitioners are entitled to dependency exemptions for the two children of one of petitioners for each of the calendar years here in issue. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who at the date of the filing of the petition in this case were residents of Houston, Texas, filed a joint Federal income tax return for each of the calendar years 1965 and 1966 with the district director of internal revenue at Houston, Texas. 897 Prior to 1960, J. W. Trotter, Jr. (hereinafter referred to as petitioner), was married to Doris Nell Trotter, now Doris Nell Plumlee and hereinafter referred to as Doris. Petitioner and Doris had two children, David W. Trotter, born on October 17, 1953, and Rickey G. Trotter, *118 born on May 7, 1956. On February 2, 1960, a divorce decree was entered by the Domestic Relations Court of Harris County, Texas, granting Doris a divorce from petitioner and awarding custody of David and Rickey to Doris. The decree directed petitioner to make payments of $30 a week through the Juvenile Probation Department of Harris County for the support of the two children. During 1965 petitioner in compliance with the decree of divorce paid the amount of $1,320 as child support to the Juvenile Probation Department of Harris County, and in 1966 made such payments in a total amount of $1,410. The amounts petitioner paid to the Juvenile Probation Department of Harris County were turned over to Doris to be used in the support of David and Rickey. During the entire years 1965 and 1966, David and Rickey resided with Doris except that they spent two 3-week periods each year, one at the beginning of their summer vacation from school and the other immediately preceding the opening of school, with petitioner. Petitioner under the divorce decree was given visitation rights with the children every other weekend from 12:00 noon on Saturday until 4:30 p.m. on Sunday. During 1965 and 1966 the *119 children spent every other weekend with petitioner. Petitioner during the years here in issue lived in a home which he had purchased in 1956. He and Doris and their two children had lived in this home prior to the latter part of 1958. The house had three bedrooms. One of these rooms was furnished with twin beds and other furniture suitable for the use of two boys. Petitioner's children used this room when they visited petitioner. At least once a month petitioner would take the two boys to the home of his father-in-law at Port Alto, Texas to spend the weekend so that he could take them fishing and hunting. Port Alto is approximately 145 miles from Houston. Petitioner very often would pick the boys up on Friday night when he was taking them to Port Alto for the weekend and return them on Sunday afternoon. Petitioner had a 1962 Ford Galaxie automobile which he drove during the years 1965 and 1966. He would use this car to pick the boys up for their visits with him and to take them for weekends to Port Alto, Texas. When petitioner had the boys over the weekend, they would have Saturday night dinner, Sunday morning breakdast, and Sunday dinner with petitioner and sometimes would have *120 their Saturday lunch with him. Generally, the boys would eat these meals with petitioner's family. When petitioner and the boys would drive down to Port Alto, Texas, they would generally take the food they expected to eat with them. During each of the years 1965 and 1966 petitioner spent approximately $50 on clothes and presents for the two boys. During the pendency of the divorce proceeding between Doris and petitioner their home had been rented furnished in late 1958 for $110 a month and in 1959 was rented for a while at $100 a month unfurnished. The rent did not include the cost of utilities. During the 6 weeks that the boys spent in petitioner's home, they had their meals with petitioner and his family and sometimes petitioner would take them during this period down to Port Alto fishing or hunting. During the years 1965 and 1966 petitioner and his then wife and their small child lived in petitioner's home and petitioner's father-in-law who was a widower would generally spend a few days a month in petitioner's home. Prior to 1965 petitioner had bought a shotgun for the use of one of his boys and during 1965 he bought a shotgun for the use of the other boy. These guns were *121 kept by petitioner at his father-in-law's residence in Port Alto and petitioner would buy shells for the boys to use in the guns in hunting and pay for their fishing tackle, bait, and other fishing equipment. Petitioner and his children used a boat for fishing which belonged to petitioner's father-in-law. Petitioner would purchase the gasoline for the boat when he and the children used it. During each of the years here in issue petitioner spent approximately $180 on food for the boys while they were with him during weekend visitations and their 6 weeks summer visits and approximately $100 on transportation to Port Alto, Texas and entertainment while in Port Alto. During the year 1965 Doris spent approximately $3,300 on the support of the boys. The items composing this $3,300 consisted of an allocation for rent including utilities but not furnishings, groceries, school 898 expenses including lunches, books and some tutoring, entertainment, presents, clothes, dental and medical expenses, and personal expenses such as hair cuts and allowances. During the year 1966 Doris and her husband spent $3,600 on similar expenses for the two boys. On their joint Federal income tax return *122 for each of the years 1965 and 1966 petitioners claimed a dependency credit exemption for each of the boys. Respondent disallowed the claimed exemptions. Opinion The issue here in purely factual. Petitioner testified with respect to his expenditures for support of the boys, and based on that testimony we have found that petitioner supplied a total support for the boys of $330 a year in addition to the payments he made to Doris for their support through the Juvenile Probation Department but not allocating any amount for the rental value of his home to the boys. Based on Doris' testimony we have found the total expenditures she or she and her husband made for the boys' support. The only items which Doris included in a detailed schedule of support which she produced at the trial which were questioned by petitioner were groceries and clothes. Doris had receipts for her total grocery bills and also receipts for the amounts spent for clothes for the boys. When questioned with respect to the expenditures for groceries, she readily admitted that the total grocery bills included such items as cigarettes, beer, and cosmetics which were not to any extent for the benefit of the boys. Her *123 estimate was that groceries and household supplies which benefited the boys amounted to approximately $10 per child per week. It is this figure we have used for groceries for the boys in making the estimate of the cost of the boys' support, and not the much higher amount which came from an allocation of a part of the total grocery bills to the boys. In one year the cost of clothes for the boys appears high. However, Doris produced receipts for most of the items and explained the necessity for them, and in our opinion she has supported the amount she claims she spent for clothes for the boys. It is apparent that when the amount of $330 spent on the boys by petitioner is added to the $3,300 spent by Doris for the year 1965 the resulting cost of support of the boys of $3,630 is in excess of twice the $1,650 support supplied by petitioner. Likewise for the year 1966 when the $330 of support items paid by petitioner in addition to the payments made by petitioner through the Juvenile Probation Department of Harris County is added to the $3,600 paid by Doris and her husband the resulting $3,930 total support of the boys is over twice the total support of the $1,740 paid by petitioner. *124 As we pointed out, we made no allocation of any portion of the rental value of petitioner's home to support of the boys. The record indicates that petitioner's home was the same home that he and Doris had shared with the boys. During the pendency of his divorce from Doris, the house had been rented. It is questionable whether any portion of the rental value of petitioner's home should be allocated to the boys. However, if some reasonable allocation for the time the boys occupied the home is made to the boys' support, it is apparent that when that amount is included in their total support as well as the portion of their support furnished by petitioner, the total support for the boys would still be over twice the amount of their support furnished by petitioner. It is petitioner's contention that one-third of the total yearly rental value of the home which he estimates on the basis of $185 a month including utilities and furnishings should be allocated to support of the boys. Petitioner's theory is that he maintained one of the three bedrooms in the home for the use of the boys and therefore one-third of the rental value of the house should be allocated to them. We do not agree with *125 petitioner's position. There is no showing in the record that petitioner and his family did not have the free use of the third bedroom when the boys were not visiting them, and in fact the fair inference from the record is that petitioner's family did use this room when the boys were not using it. Also, petitioner and his family used the other facilities of the house at all times during the year and it is clear that the boys had no use of the house except during their periods of visitation. On the basis of the evidence of record in this case, we conclude that petitioner has failed to establish that he contributed over one-half of the support of either of his sons during the taxable years here in issue. Decision will be entered for respondent.